***NOT FOR PUBLICATION*__

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WAGNER HOLDING CORP. d/b/a THE BLUE ROCK CAFE,<br><br>          Plaintiff,<br><br>v.<br><br>INVISION FUNDING, LLC d/b/a ARCA FUNDING, KAPITUS SERVICING, INC., JOHN DOES 1-10, AND ABC CORPS. 1-10,<br><br>          Defendants. | Civil Action No. 21-10538 (FLW)<br><br>OPINION |

**WOLFSON, Chief Judge:**

      Presently before this Court is Defendants Invision Funding, LLC ("Invision") and Kapitus Servicing, Inc.'s ("Kapitus") (collectively, "Defendants"), Motion to Dismiss pursuant to Rule 12(b)(6) ("Motion to Dismiss") and/or Transfer Venue pursuant to 28 U.S.C. § 1404 ("Motion to Transfer Venue").  Plaintiff Wagner Holding Corp. ("Plaintiff" or "Blue Rock")[1] alleges in its Complaint that Defendants engaged in fraudulent conduct related to cash advance agreements between the parties.  For the reasons set forth below, Defendants' Motion to Transfer is **GRANTED**, and this matter is transferred to the United States District Court for the Eastern District of Virginia.  Defendants' Motion to Dismiss is denied without prejudice; they may renew their Motion in the transferee court.

---

[1] Wagner Holding Corp. owns the Blue Rock Café.  Pl. Opp. Br. at 2.

1

A. **FACTUAL AND PROCEDURAL BACKGROUND**

For the purposes of resolving the Motion to Transfer Venue, the Court sets forth only the relevant facts. Plaintiff is a New Jersey corporation and restaurant in Keyport, New Jersey, owned and operated by William Parker. Compl. ¶¶1, 2, 22. Defendant Invision is a Virginia limited liability company[2] and Defendant Kapitus is a Virginia corporation.[3] Bishop Decl. ¶8. Between August 5, 2014 and April 2, 2018, Plaintiff and Defendants entered into eleven separate "cash advance" agreements.[4] Compl. at ¶24. The agreements set forth that Invision would provide cash advances to Blue Rock, and Blue Rock would, in turn, pay back the cash advances, with interest, by allowing Kapitus, on behalf of Invision, to withdraw a specified percentage of Blue Rock's credit card sales. *Id*. ¶¶14, 21; ECF No. 11 ("Def. Br.") Exs. B, C.

Specifically, in October 2018, Blue Rock and Invision entered into an agreement ("Agreement 1"), whereby Invision provided a cash advance to Blue Rock in the amount of $77,452.82, and in exchange, Invision received 8% of Blue Rock's credit card receipts until Invision received $107,581.97. *Id*. ¶38, 39; Def. Br. Ex. B. In April 2019, after Blue Rock paid down its balance from Agreement 1 to $70,695.45, it entered into another agreement ("Agreement

---

[2] In the Complaint, Plaintiff names "Invision Funding, LLC d/b/a Arca Funding" as a Defendant. ECF No. 11 Ex. A at 1. The cash advance agreements also name "Invision Funding, LLC d/b/a Arca Funding, LLC" as a signatory. ECF No. 11 Exs. B, C. But, confusingly, Invision disputes this characterization of Invision and Arca's corporate relationship, and explains that Invision and Arca are separate and distinct legal entities, and thus, "Defendants are not answering or otherwise responding on Arca's behalf[.]" ECF 11-1 ¶2 ("Bishop Decl."). Notwithstanding its position, however, Invision does not claim that it is not a proper party to be sued in this matter, and therefore, the Court construes Plaintiff's claims to be properly asserted against Invision.

[3] Defendants note that although the parties' first agreement identifies "Colonial Funding Network, Inc." as the authorized sub-servicing agent, Colonial changed its name to Kapitus in January 2019. Bishop. Decl. ¶3.

[4] Although Kapitus is not a signatory to the agreements, the agreements at issue in this case specifically provide that Kapitus has been granted "all right and authority as its general agent to take any and all actions to enforce the terms of [the agreements,] through legal actions in the name of [Invision,] or otherwise." ECF No. 11 Exs. B, C.

2") with Invision, whereby Invision provided another cash advance in the approximate amount of $75,000. *Id*. ¶¶41, 44; Def. Br. Ex. C.  According to Blue Rock, without its knowledge, the balance from Agreement 1 was improperly added to the amount borrowed in Agreement 2, and Invision and Kapitus thereafter charged the full amount of interest on both loans, such that the new balance became $208,101.48.  *Id*. ¶¶45, 46.  In that regard, Plaintiff alleges, among other things, that Invision and Kapitus improperly charged interest twice on Agreement 1, and greatly increased the interest due on Agreement 2.  *Id*. ¶¶47, 48.

Agreements 1 and 2 contain the same forum selection and choice-of-law clauses ("Forum Selection Clause" and "Choice-of-Law Clause").  The Forum Selection Clause states:

> **Binding Effect; Governing Law, Venue and Jurisdiction.** [Blue Rock Café] and Guarantor agree that any suit, action or proceeding to enforce or arising out of this Agreement shall be brought in any court in the Commonwealth of Virginia or in the United States District Court for the Eastern District of Virginia (the "Acceptable Forums"), and [Blue Rock Café] and Guarantor waive personal service of process. [Blue Rock Café] and Guarantor agree that the Acceptable Forums are convenient to them, submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue. In the event a legal proceeding concerning this Agreement is initiated in any other forum, [Blue Rock Café] and Guarantor waive any right to oppose any motion or application made by [Invision] to transfer such proceeding to an Acceptable Forum, or to dismiss the action on the grounds of *forum non conveniens*.

The Choice-of-Law Clause states:

> This Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement is governed by, and this Agreement will be construed in accordance with Virginia law (to the extent not preempted by federal law) without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for under this Agreement will be governed by the laws of the Commonwealth of Virginia. [Blue Rock Café] and Guarantor understand and agree that (i) [Invision] and/or Colonial[5] are located in Virginia, (ii) all final credit

---

[5] While, substantively, Agreements 1 and 2 contain the exact same choice-of-law provision, they differ slightly in identifying the parties.  Agreement 1 uses "Colonial" and Agreement 2 uses "Kapitus." *See* Def. Br. Exs. B, C.  As explained, *supra*, Colonial changed their name to Kapitus in January 2019.  There is no dispute that both Agreements may be enforced by Kapitus.

3

> decisions are made from Virginia, (iii) the Agreement is made in Virginia (that is, no binding contract will be formed until [Blue Rock Café's] signed Agreement in received and accepted in Virginia) and (iv) [Blue Rock Café's] payments are not accepted until received in Virginia.

Def. Br. Exs. B, C at 6. On March 31, 2021, Plaintiff commenced this action by filing a Complaint in the Superior Court of New Jersey. Bishop Decl. ¶4; *see* Complaint. The Complaint asserted five claims, including: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"); (2) Fraud; (3) Negligent Misrepresentation; (4) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (5) Breach of Contract. Compl. ¶¶67-141. On April 30, 2021, Defendants removed the action to this Court. ECF No. 1. Subsequently, Defendants filed the instant Motion to Dismiss Pursuant to Rule 12(b)(6) and/or Transfer Venue Pursuant to 28 U.S.C. § 1404.[6] Because I grant Plaintiff's Motion to Transfer Venue, I do not reach Defendants' Motion to Dismiss.

### B. STANDARD OF REVIEW

A district court may transfer a civil action to any other district where the case might have been brought if the transfer serves "the convenience of parties and witnesses" and is "in the interest of justice." 28 U.S.C. § 1404(a). The burden of establishing the need for transfer typically rests on the moving party, *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), "and the ultimate decision of whether to transfer a case lies within 'the sound discretion of the trial court.'" *Teva Pharmaceuticals USA, Inc. v. Sandoz Inc.*, No. 17-275, 2017 WL 2269979, at *4 (D.N.J. May 23, 2017) (quoting *Cadapult Graphic Sys. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000)); *Days Inns Worldwide, Inc. v. RAM Lodging, LLC*, No. 09-2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010).

---

[6] Defendants request that this matter be transferred to the United States District Court for the Eastern District of Virginia. Def. Br. at 1.

4

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause[.]" *Atlantic Marine Coast. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 63 (2013). "The enforcement of a valid forum-selection clause, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id*. (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)) (internal citations omitted). In that connection, "a valid forum-selection clause [should be] given controlling weight[.]" *Id*. (quoting *Stewart*, 487 U.S. at 33). Therefore, in such a case, a valid forum-selection clause requires district courts to adjust their § 1404(a) analysis in three ways. *Id*. Courts must (1) give no weight to the forum preferred by "the party defying the forum-selection clause," as that party now "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted"; (2) deem the private interests to "weigh entirely in favor of the preselected forum," and therefore, "consider only public interests"; and (3) once the matter reaches the transferee court, the "transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.* at 63-64.

Post-*Atlantic Marine*, the presence of a valid forum-selection provision will result in the transfer of a case to the designated forum in "all but the most unusual cases." *Id*. at 66; s*ee Weichert Real Estate Affiliates, Inc. v. CKM16, Inc.*, 2018 WL 652331, at *5 (D.N.J. Jan. 31, 2018) (presence of valid forum-selection a "powerful consideration"); *see also In re Ryze Claims Solutions, LLC*, 968 F.3d 701, 711 (7th Cir. 2020) ("Neither [party nor lower court] identified any decision since *Atlantic Marine* in which a district court refused to enforce a valid forum-selection agreement under § 1404(a) due to exceptional circumstances."); *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (forum-selection provision compels transfer absent extraordinary circumstances). Ultimately, however, "[t]here is no rigid rule governing a court's

5

determination," and "each case turns on its facts." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988) (internal quotations omitted); *Solomon v. Continental Am. Life Ins. Co.*, 472 F.2d 1043, 1045 ("[T]he district court is vested with a large discretion."); *Control Screening, LLC v. Integrated Trade Systems, Inc.*, No. 10-499, 2011 WL 3417147, at *4 (D.N.J. Aug. 3, 2011) (same, but "broad" discretion).

### C. DISCUSSION

Defendants argue that this action should be transferred to the Eastern District of Virginia based on the Forum Selection Clause. Def. Reply Br. at 34. In that connection, Defendants maintain that, pursuant to the Forum Selection Clause, Plaintiff has waived its right to oppose any motion or application made by Defendants to transfer this proceeding. Def. Br. at 40. In response, Plaintiff contends that even if the Forum Selection Clause does apply, the public interest factors weigh in favor of denying transfer because of the significant public policy difference between New Jersey and Virginia. Pl. Opp. Br. at 39. In addition, Plaintiff submits that the Forum Selection Clause does not apply to his NJCFA claim, because that claim falls outside the Clause's scope. *Id*.

### A. The Propriety and Appropriateness of Transfer

Section 1404(a) allows the court to transfer a case to any venue "where [it] might have been brought . . . for the convenience of the parties, in the interest of justice." 28 U.S.C. § 1404(a). Typically, the movant bears the burden of demonstrating the propriety and appropriateness of such a transfer, *Jumara*, 55 F.3d at 879 (3d Cir. 2021), and in such a case, court would weigh the public and private factors set forth by the Third Circuit to decide whether transfer was proper.[7] *Id*.

---

[7] The relevant private interests include: the plaintiff's forum preference; the defendant's forum preference; "whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the

6

However, when a valid[8] forum selection clause is present, as is the case here, the burden shifts to "the party defying the forum-selection clause" to prove "that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63. For this reason, the Court will consider Plaintiff's position according to *Atlantic Marine*'s modified transfer framework described, *supra*.

Here, Plaintiffs' argument that this matter should not be transferred rests on a single public interest factor—that there is a significant public policy difference between Virginia and New Jersey. Pl. Opp. Br. at 40-41. Defendants appear to rely on the *Atlantic Marine* framework alone, and posit that transfer should be granted in all but the most unusual circumstances. Def. Reply Br. at 33-34

### i. The Action May Have Been Brought in the Eastern District of Virginia

At the outset, the moving party must demonstrate that the venue for transfer under section 1404(a) is one "where [the action] may have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Here, Defendants have demonstrated that Plaintiff consented to the jurisdiction of the Eastern District of Virginia by agreeing to the Forum Selection Clause, which states that the parties "agree that any suit, action or proceeding to enforce or arising out of this Agreement shall be brought in any court in the Commonwealth of Virginia or in the United States District Court for the Eastern District of Virginia (the "Acceptable Forums")[.]" Def. Br. Exs. B, C. Moreover, both Invision and Kapitus are citizens of Virginia.

---

alternative forum)." *Id.* (internal citations omitted). Public factors to be considered include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80 (internal citations omitted).

[8] Plaintiff does not challenge the Forum Selection Clause's validity.

Bishop Decl. ¶8. For these reasons, I find that the Eastern District of Virginia is a forum where the action may have been brought, and therefore, is a proper transferee forum.

### ii. The Appropriateness of Transfer

Having concluded that the Eastern District of Virginia is a proper venue under § 1404(a), the Court turns to whether transfer is appropriate in light of the public interest factors, or if, on the other hand, exceptional circumstances exist which necessitate retention of this case in this district.

As discussed *supra*, when a forum-selection clause is present, as is the case here, a court evaluating a defendant's section 1404(a) motion to transfer "should not consider arguments about the parties' private interests," and "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atlantic Marine*, 571 U.S. at 64. Accordingly, the Court considers only the following six *Jumara* public interest factors: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879-80.

First, regarding enforceability of a potential judgment, if both forums are federal district courts, "this factor has little relevance because it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other." *DGVault, LLC v. Dunne*, No. 18-14152, 2020 WL 57876, at *6 (D.N.J. Jan. 6, 2020) (quoting Moore's Federal Practice — Civil § 111.13). Therefore, this factor is neutral. Second, as to easy, expeditious, and inexpensive trial, although Plaintiff is a New Jersey corporation with its sole restaurant in New Jersey, Defendants are both Virginia-based businesses.

8

While the parties' contractual transactions took place largely in New Jersey, the majority of the records and relevant actors are based in Virginia; however, these facts do not necessarily mean that either location would ultimately be easier or less expensive to litigate. On balance, I find this factor is neutral as well. Third, the relative administrative difficulty due to court congestion weighs in favor of transferring the case. Civil caseload statistics through September 30, 2021, show the District of New Jersey with 61,253 pending cases, whereas the Eastern District of Virginia has 2,660. U.S. District Courts – Civil Cases Commenced, Terminated, and Pending, Caseload Statistics Data Tables Tbl. C-1, https://www.uscourts.gov/sites/default/files/data_tables/jb_c1_0930.2021.pdf (last visited Dec. 19, 2021). Thus, congestion is substantially lower in Virginia, making expeditious disposition of this matter more likely in Virginia than New Jersey. For this reason, this factor weighs in favor of transfer. Fourth, while it is notable that Plaintiff is a New Jersey business, and the alleged misrepresentations by Defendants were received by Plaintiff in New Jersey, the decision to allegedly overcharge Plaintiff occurred in Virginia, because it is the home of Defendants' headquarters. Accordingly, Virginia "has an interest in regulating and protecting its businesses just as much as New Jersey does" with respect to Plaintiff's business. *Decoration Design Solutions, Inc. v. Amcor Rigid Plastic USA, Inc.*, No. 20-2667, 2020 WL 6482696, at *9 (D.N.J. Oct. 26, 2020). As such, this matter inherently implicates the local interests of both states. This factor is, therefore, in equipoise. Fifth, as to public policy, Plaintiff argues that "Virginia Law would contradict the established public policies of New Jersey" because Virginia's consumer protection statute does not permit small businesses to bring consumer fraud actions, whereas New Jersey's does, and New Jersey also has a strong anti-usury policy. Pl. Opp. Br. at 5. While New Jersey has expressed a public policy in protecting its small businesses through the NJCFA, New Jersey public policy also "favors enforcement of contractual forum selection

9

clauses." *Panaserve, LLC v. Trion Solutions, Inc.*, No. 19-16496, 2021 WL 2644122, at *8 (D.N.J. June 28, 2021) (internal citation omitted). "And, while New Jersey will not uphold a forum-selection clause where the contractually-selected forum has a policy which is repugnant to New Jersey public policy," that is not the case here. *Rave Pak, Inc. v. Bunzl, USA Inc.*, No. 21-00295, 2021 WL 3486937, at *7 (D.N.J. Aug. 9, 2021) (internal citation and quotations omitted). While there may be a distinction between New Jersey and Virginia consumer protection law, the inquiry, here, which Plaintiff has failed to show, is whether Virginia's consumer protection policy is "repugnant" to that of New Jersey's. *See* Def. Reply Br. at 3-4. I have no basis to make that finding. Further, even if this matter remained in New Jersey, the Agreements contain a Choice-of-Law Clause that dictates that Virginia law should apply. Therefore, it is more than a mere possibility that the NJCFA would not apply if the matter were to remain here. In light of the competing public policy of New Jersey, and the lack of repugnant public policy in Virginia, this factor is also neutral. Finally, sixth, the Eastern District of Virginia is more than capable of applying New Jersey law, should the court there must do so. This factor is neutral as well.

Accordingly, in light of the private interest factors weighing entirely against Plaintiff, and the foregoing analysis of the public interest factors, which tip slightly in favor of transfer, I find that Plaintiff has failed to meet its burden of proving that this case constitutes an "unusual circumstance" that overcomes the application of a valid Forum Selection Clause. Therefore, based on the Forum Selection Clause, transfer to the Eastern District of Virginia is appropriate.

### B.  Forum Selection Clause's Scope

I will next address Plaintiff's argument that its NJCFA claim falls outside the Forum Selection Clause's scope. Plaintiff contends that, because the Clause covers "any suit, action or proceeding to enforce or arising out of this Agreement[,]" and because its NJCFA claim "arises

out of pre-Agreement conduct and not the Agreement itself[,]" the NJCFA claim falls outside the Clause's scope. Pl. Opp. Br. at 39. Critically, Plaintiff only raises this scope issue as to its NJCFA claim, and does not argue that its four other claims are outside the Clause's scope. Therefore, Plaintiff concedes that the remaining four claims, *i.e.*, Fraud, Negligent Misrepresentation, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Breach of Contract, are governed by the Forum Selection Clause.[9] As such, those four claims are subject to be transferred. As to the NJCFA claim, even if that claim falls outside the Clause's scope, the Court would not, as a matter of judicial economy, sever the claims and allow this matter to be litigated in separate forums.

If the NJCFA claim falls outside the Forum Selection Clause's Scope, the modified *Atlantic Marine* transfer framework would not apply to it. *See Reading Health System v. Bear Sterns & Co.*, 900 F.3d 87, 97 (3d Cir. 2018) ("[T]he transfer framework in *Atlantic Marine* presupposes the existence of an action that falls within the scope of a valid-forum-selection clause."). Rather, in such a scenario, I would consider whether to transfer the NJCFA claim pursuant to the traditional private and public interest factors set out by the Third Circuit in *Jumara*, 55 F.3d at 879.

Here, these factors would overwhelmingly weigh in favor of transferring the NJCFA claim rather than severing it from the four other claims to be transferred to the Eastern District of Virginia. Having already analyzed the public interest factors *supra*, the Court further adds that severing factually overlapping claims would implicate a number of private and public *Jumara* factors, all in a manner that would weigh heavily in favor of transferring the claim. These factors include the convenience of the parties and witnesses, practical considerations that could make the

---

[9] On the question of the Forum Selection Clause's breadth, Plaintiff argues that New Jersey law should apply, even though the Agreements contain a Choice-of-Law Clause requiring application of Virginia law. I need not delve into the complexities of the choice-of-law analysis here, because even if the NJCFA claim falls outside of the Forum Selection Clause's scope, I would, nonetheless, transfer all of the claims for the reasons set forth, *infra*.

11

trial easy, expeditious, or inexpensive, and the relative administrative difficulty in the two fora resulting from court congestion. *See id*. In that connection, the Third Circuit has admonished that courts "should not sever [claims] if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 33-34 (3d Cir. 1993); *see D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 111 (3d Cir. 2009) ("[B]efore dividing the case, the District Court should weigh the factors favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums."); *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994) (explaining Third Circuit position against severance when doing so requires same issues to be litigated in two places). Here, the claims involve the same operative facts and contracts, as well as the same or similar allegations of misrepresentation and fraud. *See id*. Defendants, and Plaintiff, for that matter, would be forced to litigate the same issues in two separate courts. "To create duplicative litigation" in two different fora would be "pointless, an immense waste of judicial and party resources, and patently wasteful." *Corsentino v. Meyer's RV Centers LLC*, No. 20-03287, 2020 WL 4199744, *7 (D.N.J. July 22, 2020) (internal citations and quotations omitted). For these reasons, I find that even if the NJCFA claim were found to be outside the scope of the Forum Selection Clause, the *Jumara* factors would weigh heavily in favor of transferring the NJCFA claim alongside the four other claims. As such, this matter, in its entirety, is transferred to the Eastern District of Virginia. *See Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 703 (E.D. Va. 2020) ("Because the Court will transfer this action in its entirety, it need not determine whether the Agreement encompasses Plaintiff's §1681g claim.").

D.  **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Transfer Venue is **GRANTED**; this matter shall be transferred to the United States District Court for the Eastern District of Virginia. Defendants' Motion to Dismiss is denied without prejudice, and they may renew the motion in the transferee court.


Date:   December 20, 2021                                       /s/ Freda L. Wolfson
                                                                                       Freda L. Wolfson
                                                                                       U.S. Chief District Judge